[Cite as *In re A.R.*, 2013-Ohio-788.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
|  | : | Patricia A. Delaney, P.J. |
|  | : | William B. Hoffman, J. |
| A.R., G.R., C.R., C.R., AND S.R. | : | Sheila G. Farmer, J. |
|  | : |  |
|  | : | Case Nos. 12-CA-111, 12-CA-112, |
|  | : | 12-CA-113, 12-CA-114, 12-CA-115, |
|  | : | 12-CA-117, 12-CA-118, 12-CA-119, |
|  | : | 12-CA-120, and 12-CA-121 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

| CHARACTER OF PROCEEDING: | Civil Appeal from Fairfield County Court of Common Pleas, Juvenile Division, Case Nos. 2011-AB-102, 2011-AB-103, 2011-AB-104, 2011-AB-105, 2011-AB-109 |
|---|---|
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | February 13, 2013 |
| APPEARANCES: | |

For Mother S.L.                                        Guardian Ad Litem

AARON R. CONRAD                              MICHELLE EDGAR
Conrad Law Office, LLC                        414 E. Main Street
120 ½ E. Main Street                             Suite 200
Lancaster, Ohio  43130                          Lancaster, Ohio  43130


For FCCPS                                             Attorney for Children

JULIE BLAISDELL                                  MARK ORT
Assistant Prosecuting Attorney             13297 Rustic Drive, N.W.
239 W. Main Street                                 Pickerington, Ohio  43147
Lancaster, Ohio   43130

For Father G.R.

JIM FIELDS
117 W. Main Street
Suite 206
Lancaster, Ohio  43130

*Delaney, P.J.*

{¶1} Appellant S.L. (mother), and appellant G.R. (father), appeal from the September 25, 2012, Entries of the Fairfield County Court of Common Pleas, Juvenile Division, terminating their parental rights and granting permanent custody of S.R., A.R., G.R., C.R., and C.R. to Fairfield County Child Protective Services ("FCCPS").

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} Appellants are the biological parents of S.R. (DOB 2/5/96), A.R. (DOB 2/8/98), G.R. (DOB 5/5/99), C.R. (DOB 3/14/01) and C.R. (DOB 12/7/02). On April 21, 2011, five separate complaints were filed in Case Nos. 2011-AB-102, 2011-AB-103, 2011-AB-104, 2011-AB-105, and 2011-AB-109 alleging that the children were dependent children. The complaints indicated that FCCPS had been involved with the subject family intermittently since November of 2000, and indicated that FCCPS had received reports of drug usage in the house, both by some of the children and by appellants. Pursuant to an Entry filed on May 10, 2011, the children were placed under a shelter order of court ordered protective supervision.

{¶3} As memorialized in a Memorandum Entry filed on July 19, 2011, the parties stipulated to a finding of dependency and the trial court found the children to be dependent children. The trial court granted temporary custody of the children to FCCPS and ordered appellants to remain clean and sober and to comply with their case plans.

{¶4} On April 9, 2012, FCCPS filed motions in the five separate cases asking that A.R. C.R., C.R. and G.R. be placed in the permanent custody of the agency and that S.R. be placed in the permanent custody of the agency or, in the alternative, be placed in a planned permanent living arrangement with FCCPS. FCCPS, in its motions,

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

3

indicated that appellants continued having problems with drugs and/or alcohol and had not sufficiently completed any of the goals of their case plans.

{¶5} A trial on the motions for permanent custody was held on September 11, 2012. Appellants, who had been notified of the date of the trial, were not present but were represented by counsel.

{¶6} At the trial, David Groff, a caseworker with FCCPS who had been assigned to the case from May of 2011, until it was transferred to another casworker on January 9, 2012, testified that the agency initially became involved over concerns that appellants were using drugs in the home and the children were not being supervised. Groff testified that appellant G.R. was on probation and had tested positive for marijuana in March of 2011 and that "there were concerns that the kids were using in the home, that the parents were using in front of the children and that they were not supervising properly in or out of the home,.." T. at 10. According to Groff, A.R. and S.R. admitted smoking marijuana with their uncle Shane who was in and out of the home and would sometimes spend weekends with him. Groff further testified that S.R. was living with his maternal grandparents when the agency became involved and the maternal grandmother smoked marijuana while the maternal grandfather had issues with pills.

{¶7} Groff testified that he developed case plans for both appellants and that he developed appellant S.L.'s plan first because appellant G.R. was in jail. He testified that appellant S.L.'s case plan required her to complete a drug and alcohol assessment at the Recovery Center and to follow any recommendations, to be screened for drugs, to attend parenting classes and to have stable housing and income. S.L.'s plan also required her to attend AA meetings three times a week and to obtain a sponsor. From

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

4

July 14, 2011, until November 14, 2011, appellant S.L. did not attend any of her drug screens. The following testimony was adduced when Groff was asked what was the outcome of the drug screens that appellant completed after November 14, 2011:

{¶8} "A. Um, they were, they were all positive. Um, to go back to the beginning, um, she had six diluted screens. Um, miss, she had four positive screens for marihuana, um, Suboxone and oxycodone. One positive for oxycodone, one positive for Suboxone and oxycodone, two positive for marihuana, uh, three positive for marihuana and Suboxone, two for marihuana and oxycodone, one positive for marihuana, opiates and Suboxone and three positive Suboxone screens, which she wasn't prescribed.

{¶9} "Q. All right. So now what kind of timeframe are you talking about? Are you all talking about after November?

{¶10} "A. She had started, she had started screening in May.

{¶11} "Q. Okay.

{¶12} "A. So that was screens for May and June." Transcript at 14-15.

{¶13} Groff testified that appellant S.L. admitted to him in December of 2011 that she had smoked marijuana. He testified that appellant S.L. had completed her intake at the Recovery Center in mid-July, started her Treatment Readiness Groups and had completed her alcohol and drug assessment. However, in September and October of 2011, appellant S.L. did not show up for four appointments with her counselor because she did not like the counselor. Groff testified that appellant S.L started meeting with her counselor again in December of 2011 and was meeting with her consistently after such time.

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

5

{¶14} Appellant S.L.'s case plan also required her to make sure that only appropriate people were in the home. Groff testified that he asked that the children have no contact with Shane, appellant S.L.'s brother, and with Adam Gordon. According to Groff, the children, after the agency received shelter custody in May of 2011, were allowed to remain in the home with appellant S.L. as long as she was working on her case plan and cooperating. However, the children were removed from the home on June 10, 2011, after two of the children were picked up for breaking into a neighbor's house.

{¶15} Groff testified that appellant did not show up for her intake appointment at the Parent Project and did not show up for her first Parent Project class in September of 2011, so would have to wait until the February session. He testified that he recommended that appellants attend a parenting group at Mid-Ohio, but that both appellants did not follow through. While appellant S.L. did obtain housing, Groff testified that he did not believe that a one bedroom apartment was big enough for a family of seven. He also testified that appellant S.L. had never worked although he was unaware that she had any disability. When asked if she had successfully completed any aspect of her case plan, Groff testified that appellant S.L. had not.

{¶16} Groff also testified that he had developed a case plan for appellant G.R. in June of 2011, and that appellant G.R. had signed the plan. Appellant G.R.'s case plan required him to complete drug screenings, to have a alcohol and drug assessment at the Recovery Center and to follow any recommendations, and to attend three AA meeting or twelve-step meetings per week and obtain a sponsor. Appellant G.R. was inconsistent with his drug screenings and did not submit to screens from July 14, 2011,

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

6

through November 14, 2011. Prior to July 14, 2011, appellant G.R. submitted diluted screens and had a couple of positive screens for oxycodone for which he did have a prescription. Appellant G.R. had diluted screens during the period from June 9, 2011 to July 14, 2011. Groff testified that appellant G.R. told him that the screens were diluted because appellant G.R. drank a lot of water and that appellant denied using the substances for which he had tested positive.

{¶17} According to Groff, appellant had positive screens after mid-November of 2011. When questioned by Groff about the screens, appellant G.R. did not respond. Groff testified that appellant G.R. completed his intake at the Recovery Center in mid-July of 2011 and consistently attended weekly counseling from December 2, 2011. He testified that as part of appellant G.R.'s case plan, he recommended parenting education through the Parent Project, but that appellant G.R. did not show up for the intake appointment or for the first class, so had to wait until February of 2012 to get enrolled in the class.

{¶18} As part of his case plan, appellant G.R. was asked to get a mental health evaluation at Mid-Ohio after appellant S.L. reported domestic violence. Groff testified that appellant G.R.'s psychological examination was scheduled, but that appellant did not follow through with the examination. He testified that appellant received social security disability. Groff further testified that, as part of their case plans, he wanted both appellants to attend twelve-step meetings. While appellants told him that they had attended, they did not produce any documentation.

{¶19} At the trial, Groff was questioned about visitation. He testified that appellants visited with the children together. Initially, appellants had supervised visits a

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

7

couple of hours a week until October of 2011, when a court order limited visitation to no more than one hour a week until appellants complied with their case plans. Groff testified that the children seemed bonded with their parents and that the visits went well. At the time that Groff was involved, the children were together in foster care, were better behaved and seemed bonded with the foster family. He testified that they had done well in foster care and that appellants were consistent with their visitation. Groff further testified that the children were doing well in school and involved in activities.

{¶20} The next witness to testify was Elyssa Wanosik, who took over as caseworker in early January of 2012. Wanosik testified that since she had taken over, appellant S.L. had ten missed drug screens and had tested positive for Suboxone and marijuana prior to obtaining a prescription for Suboxone. Since she obtained her prescription for Suboxone on February 8, 2012, appellant S.L. had testified positive for Suboxone and also had tested positive for marijuana on May 17, 2012. Appellant denied using marijuana, but admitted that she used Suboxone prior to obtaining her prescription. Wanosik testified that the screens before and after the positive marijuana screen on May 17, 2012 showed no marijuana.

{¶21} Wanosik also testified that appellant S.L. was discharged in August of 2012, from the Recovery Center due to missed appointments and was inconsistent in keeping her counseling appointments. She testified that appellant S.L. had periods of inconsistency followed by periods of consistency. According to Wanosik, appellant S.L. provided documentation showing that she had attended twenty twelve-step meetings from May 26, 2012 through the beginning of August of 2012. She testified that appellant S.L. was ordered to attend three twelve-step meetings a week.

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

8

**{¶22}** Wanosik further testified that appellant S.L. had successfully completed the Parent Project in April and that she was satisfied that appellant S.L had completed parenting education. Appellant S.L. was still residing in the same one bedroom apartment and Wanosik testified that she discussed the need for additional income with appellant S.L. so that she could obtain better housing. Wanosik testified that appellant S.L. had been on a waiting list for housing since January or February of 2012 and that appellant S.L. still was not working and did not take advantage of referrals to employment services. According to Wanosik, appellant S.L. did not have beds for all of the children.

**{¶23}** When asked, Wanosik testified that appellant S.L. had not successfully completed her case plan with respect to recovery services and with respect to housing and employment. Wanosik indicated that appellant S.L. had "no income herself or the ability to provide appropriate housing for the size of her family." T. at 73.

**{¶24}** With respect to appellant G.R., Wanosik testified that he had received a prescription for Suboxone shortly after she took over the case. She testified that he had completed the majority of his drug screens and that he had not tested positive for anything other than his prescribed Suboxone, although he had some diluted screens. From May 2012 until the time of the trial, appellant G.R. had consistently been attending counseling at the Recovery Center. Wanosik testified that appellant G.R. was not involved in any type of mental health counseling and had not yet completed a psychological assessment. The psychological assessment had been continued to December of 2012.

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

9

**{¶25}** Wanosik testified that appellant G.R. had not successfully completed his case plan with respect to substance abuse and drug and alcohol treatment because he had not successfully complied with the counseling and treatment requirements or with the requirement to attend AA meetings. She testified that he had not complied with the mental health or housing aspects of his case plan. Wanosik testified that appellants visited together consistently with the children one hour a week and that the supervised visits took place at appellants' home. She testified that the visits went well and that the children had a bond with their parents. Wanosik testified that no other family members were willing and appropriate to care for the children.

**{¶26}** When asked if it was the agency's position that appellants were unwilling to provide an adequate home for their children, Wanosik responded affirmatively. She testified that the children were together in the same foster home and were doing well. The following testimony was adduced when she was asked to describe the children's need for a legally secure permanent placement:

**{¶27}** "A. The, the children should be in an environment where they can thrive, um, and their needs are met and their safety isn't threatened by individuals who have concerns for substance abuse and criminal activity, um, as well as the inability to parent and supervise the children appropriately. Um, at this time, [S.L.] and [G.R.] are not able to provide a safe and stable environment and a home free from substance abuse. Um, with no other family placement options available, um, it's, it's our, the Agency's position that it would be in the best interests for the children to be placed in the permanent custody of the agency." Transcript at 92-93.

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

10

**{¶28}** On cross-examination, Wanosik testified the delay with respect to expanding visitation were AA and appellant G.R.'s lack of a sponsor. She testified that appellant G.R. had never missed a psychological appointment, but that the appointments had always been moved. She testified that he had a pending psychological appointment in December of 2012. There was testimony that appellant G.R. had not confirmed prior appointments to have his psychological examination performed, so the examinations did not go forward. On redirect, she testified that appellant S.L. did not have an AA sponsor, but that appellant S.L. had told her the night before that appellant G.R. had one.

**{¶29}** Michelle Edgar, the Guardian Ad Litem, testified that she had observed a visit between appellants and the children the week earlier and that Shane, appellant S.L.'s brother, came into the apartment. She testified that appellant told her that Shane was living in the apartment above them and that this concerned her because appellants were trying to get sober and Shane was using drugs. Edgar testified that appellants needed to report the fact that Shane was living upstairs to the agency and that she had discussed the need for a bigger place with appellants. She testified that the children needed stability and permanency. The Guardian Ad Litem, in her September 4, 2012 report, had opined that it was in the children's best interest that permanent custody be granted to the agency. In her report, the Guardian Ad Litem stated, in relevant part, as follows:

**{¶30}** "The Guardian ad Litem has observed the children with their parents or is scheduled to do so prior to the trial in this matter. The Guardian ad Litem has spoken to all of the children individually. The Guardian ad Litem has requested the parents to

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

11

contact her so that she can meet with them and conduct home visits. However, the Guardian ad Litem has not heard from either of the parents to set up such meetings except for a few phone calls at the beginning of the case from Mother. However, she failed to follow up with me to schedule any meetings. The parents have only done the bare minimum required of them in this matter and have failed to follow all the orders of the court in order to increase their visitation time with the children pursuant to the court orders. The Guardian ad Litem has reviewed the pertinent documentation of Fairfield County Children Services. It is clear from the Guardian ad Litem's investigation into this matter that the children cannot be placed with either parent within a reasonable time and should not be placed with either parent pursuant to the statute as stated above."

{¶31} Pursuant to Entries filed in the five cases on September 25, 2012, the trial court terminated appellants' parental rights and granted permanent custody of the children to FCCPS.

{¶32} Appellant S.L. appealed from the trial court's September 25, 2012 Entry in the five cases. Her appeals were assigned Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114 and 12-CA-115. Appellant S.L., in such cases, raises the following assignments of error:

{¶33} "I. THE TRIAL [SIC] ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTERESTS OF A.R., G.R., C.R., C.R., AND S.R. TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF S.L. AND PLACE A.R., G.R., C.R., C.R., AND S.R., IN THE PERMANENT CUSTODY OF FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES.

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

12

{¶34} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT A.R., G.R., C.R., C.R., AND S.R., COULD NOT BE PLACED WITH S.L. WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH S.L.

{¶35} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED COUNSEL'S REQUEST FOR A CONTINUANCE BASED UPON THE ABSENCE OF THE PARTIES AND THE POTENTIAL FOR PERMANENT TERMINATION OF PARENTAL RIGHTS."

{¶36} Appellant G.R. also appealed from the trial court's September 25, 2012 Entry in the five cases. His appeals were assigned Case Nos. 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120 and 12-CA-121. Appellant G.R., in such cases, raises the following assignment of error:

{¶37} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S COUNSEL'S MOTION FOR A CONTINUANCE."

{¶38} For purposes of judicial economy, we shall address the ten cases together.

Assignment of Error III in Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114 and 12-CA-115 and Assignment of Error in Case Nos.  12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120 and 12-CA-121

{¶39} Appellant S.L., in her third assignment of error, and appellant G.R., in his sole assignment of error, argue that the trial court abused its discretion in denying their counsels' request for a continuance of the trial.

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

13

**{¶40}** The decision to grant or deny a motion for continuance rests within the sound discretion of the trial court. *State v. McMilen,* 113 Ohio App.3d 137, 680 N.E.2d 665 (3rd Dist.1996). This Court may not reverse a trial court's decision unless we find it has abused its discretion. *State v. Unger,* 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). The Supreme Court has defined the term abuse of discretion as demonstrating the trial court's attitude is unreasonable, arbitrary, or unconscionable. See, *e.g., Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶41}** In this case, neither appellant appeared for the trial despite receiving notice of the same by personal service on May 3, 2012. Both appellants, on such date, had signed a notice stating that the trial was scheduled for September 11, 2012, at 9:00 a.m. The following discussion took place on the record:

**{¶42}** "THE COURT: Mr. Fields?

**{¶43}** "ATTY. FIELDS: Thank you, your Honor. I'd ask the Court to continue this matter. I can't explain why [appellant G.R.] is not here. He and I have traded phone calls this week with him having left me a message last night. Before, I looked this morning and saw that he had called me back. Um, I know Mr. Conrad has called and left a message on their cell phone. Uh, they have been, you know, they haven't been perfect in what they're doing, but they've been visiting, they've been testing, um, they've been active somewhat with their case plan and I don't have a reason for why they're not here today. I believe that they've been at the hearings and I'm just perplexed as to why they're not here. So, I would ask the Court to grant us a continuance in this matter, so we can find out what happened to our clients.

**{¶44}** "THE COURT: Mr. Conrad?

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

14

**{¶45}** "ATTY. CONRAD: Thank you, your Honor.  I do agree, I do agree with Mr. Fields' position.  I actually spoke with my client [appellant S.L.] on August 20th and then again on August 22nd, was my last contact with her.  In this conversations [sic], we were addressing the counseling, certain counseling issues and other aspects of her case plan.  She indicated still that she wished to contest the permanent custody motion, so I'm surprised that she is not here today.  I did leave a message on a voice mail, uh, around 9:15 this morning, um, but I have not heard anything back from my client.  I would request a continuance based on those facts.

**{¶46}** "THE COURT: Mr. Ort or Ms. Edgar?

**{¶47}** "ATTY. EDGAR: I would just say, your Honor, I just met with the parents on Friday.  I saw on Wednesday; I talked with them on Tuesday or Thursday. . She definitely is aware of today and they were going to be here today (inaudible) case plan, but they still are (inaudible) visits, so….I think that (inaudible) since I've been (inaudible) involved in the case; it's been well over a year (inaudible).

**{¶48}** "THE COURT: Do you know anything, Ms. Wanosik, about their appearance today?  Have you talked to them?

**{¶49}** "MS. WANOSIK: I talked to [appellant S.L.] yesterday, um, but she didn't, I had discussed the hearing.  She knew about it, but she didn't mention, um….

**{¶50}** "THE COURT: Coming or not coming?

**{¶51}** "MS. WANOSIK: Hun, uh.  She sounded like she planned it on coming.  I know she left a voicemail for my supervisor, Karen, right after it and she wasn't saying I don't plan on being there or anything.

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

15

{¶52} "PROS. BLAISDELL: I don't think they've, I know that [appellant G.R.] wasn't here on our first hearing because he was in jail, but I don't think they've missed.

{¶53} "MS. WANOSIK: Hun, uh.

{¶54} "ATTY. FIELDS: No, and that's…

{¶55} "PROS. BLAISDELL: ….a court hearing.

{¶56} "ATTY. FIELDS: Even when they weren't doing anything…

{¶57} "PROS. BLAISDELL: Right.

{¶58} "ATTY. FIELDS: …they came to the hearing. I mean, I think that's when they geared it up. I think in November of '11 we came to a hearing and they hadn't done, they weren't testing, they weren't doing anything and they were pretty much told they needed to step it up or it would just be a done deal and that's when they started doing a little more. But that's why I'm surprised they're not here.

{¶59} "THE COURT: It's 10:20. If they were just a little late, it would be one thing, but no calls, no nothing. I'm proceeding." T. at 2-5.

{¶60} Appellant G.R., in his brief, contends that both appellants "were not in attendance due to mistakenly believing that the trial was to begin at 1:30 p.m." However, there is nothing in the record supporting such assertion. Rather, as is stated above, both appellants signed a notice that indicated that the trial was scheduled for 9:00 a.m. on September 11, 2012. Moreover, counsel for both appellants and for the children, the Guardian Ad Litem, and the Assistant Prosecuting Attorney all were present for the trial. Based on the forgoing, we find that the trial court did not abuse its discretion in denying the continuance. The trial court's decision was not arbitrary, unconscionable or unreasonable.

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

16

{¶61} Appellant's S.L.'s third assignment of error and appellant G.R.'s sole assignment of error are, therefore, overruled.

Assignments of Error I and II in Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-113, 12-CA-114 and 12-CA-115

{¶62} Appellant S.L., in her first two assignments of error, argues that the trial court erred in finding that appellee showed by clear and convincing evidence that her parental rights should be terminated and that the children could not or should not be placed with appellant S.L. within a reasonable time.

{¶63} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries,* 5th Dist. No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass,* 10 Ohio St .2d 230, 227 N.E.2d 212 (1967).

{¶64} R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

17

custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

**{¶65}** "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents….

**{¶66}** "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."

**{¶67}** In this case, the trial court found the children had been in the temporary custody of the agency for a period greater than 12 months of a consecutive twenty-two month period. We find the record supports this conclusion.

**{¶68}** The trial court also determined that the children could not be placed with either parent within a reasonable time nor should the children be placed with either parent. In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

18

whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." *See* R.C. 2151.414(E)(1).

**{¶69}** While appellant S.L. maintains that the trial court erred in finding that the children could not or should not be placed with her within a reasonable time, we disagree. There was testimony that appellant S.L. had not remedied her substance abuse issues and had tested positive for marijuana and for Suboxone prior to obtaining her prescription for the same. In addition, appellant S.L. was discharged from treatment to the Recovery Center due to missed appointments and failed to comply with her case plan requirement that she attend three twelve-step meetings per week and obtain a sponsor. Moreover, appellant S.L. lacked appropriate housing for her five children and despite having no known disability, had not had a job throughout the case nor made any effort to obtain one. Furthermore, as testified to at the trial, appellant allowed the children to have contact with her brother Shane, a known drug user. Thus, contrary to appellant S.L.'s assertion, there was testimony that appellant S.L. continually and repeatedly failed to remedy the conditions that caused the children to be removed.

**{¶70}** The trial court next determined it was in the children's best interests to be placed in the permanent custody of FCCPS. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

19

parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000) quoting *In re Awkal,* 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (1994).

{¶71} In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

{¶72} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

{¶73} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶74} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

{¶75} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶76} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶77} In this case, testimony was adduced that the children were all in the same foster home and were doing well. There was testimony that the children had been in the agency's custody since July 19, 2011. The Guardian Ad Litem, in her September 4,

Fairfield County App. Case Nos. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121

20

2012, report, indicated that a grant of permanent custody would be in the best interest of the children.  Elyssa Wanosik, at trial, also testified that the children needed to be in a safe environment with supervision and that a grant of permanent custody would be in their best interest.

**{¶78}** Based on the foregoing, appellant S.L.'s first two assignments of error are overruled.

**{¶79}** Accordingly, the judgment of the Fairfield County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur

_____

_____

_____

JUDGES

PAD/d0114

[Cite as *In re A.R.*, 2013-Ohio-788.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| A.R., G.R., C.R., C.R., AND S.R. | : | |
| | : | |
| | : | |
| | : | JUDGMENT ENTRY |
| | : | |
| | : | |
| | : | |
| | : | CASE NOS. 12-CA-111, 12-CA-112, 12-CA-113, 12-CA-114, 12-CA-115, 12-CA-117, 12-CA-118, 12-CA-119, 12-CA-120, and 12-CA-121 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to Appellants.

_____

_____

_____

JUDGES